# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALISON SUGGS, SR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-25-RLB** |
| **CENTRAL OIL OF**<br>**BATON ROUGE, LLC** | **CONSENT** |

---

## RULING

Before the Court is a Motion for Summary Judgment (R. Doc. 32) filed by Defendant, Central Oil of Baton Rouge, LLC (Defendant).  Plaintiff, Alison Suggs, Sr. (Plaintiff), filed a Memorandum in Opposition (R. Doc. 38), to which Defendant replied (R. Doc. 39).  As discussed below, Defendant's Motion for Summary Judgment (R. Doc. 32) is **GRANTED in part** and **DENIED in part** because there are genuine issues of material fact precluding summary judgment.

## I.      BACKGROUND

In this action, Plaintiff claims he was terminated by his employer, Central Oil, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(a), and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a).[1]  Plaintiff, who was born on August 23, 1945, is 68 years old and suffers from coronary/carotid artery disease. (R. Doc. 38-2 at 14-16).  He began working at Defendant's facility in July of 2011 through a staffing agency that technically employed Plaintiff. (R. Doc. 32-2 at 1).  Plaintiff worked as a driver "picking up

---

[1] Plaintiff raises additional claims that Defendant has failed to pay him certain wages, but those claims are not part of Defendant's Motion for Summary Judgment and are not discussed by the Court.

used oil . . . and delivering new oil." (R. Doc. 38 at 7). Originally, Plaintiff claims, he was not terribly busy because he only picked up used oil or delivered new oil as instructed by his employer. Plaintiff's work load eventually increased, however, and he "stayed busy" (R. Doc. 38-2 at 6) after he was asked to start "soliciting" new used oil costumers on his slower days at work. (R. Doc. 38 at 7). A couple of months later in October of 2011, Defendant hired Plaintiff as its own employee and his job duties continued as usual. (R. Doc. 32-8). At that time, Plaintiff was 66 years old and had been diagnosed with coronary/carotid artery disease for two years, which he disclosed to Defendant upon being hired in October. (Pl.'s Second Injury Board Knowledge Questionnaire, R. Doc. 38-2 at 14-16).

Plaintiff took sick leave in early May of 2012 for a doctor's appointment. At that appointment, Plaintiff's doctor informed him that surgery was necessary to clear his blocked arteries. (R. Doc. 38 at 10). On May 22, 2012, Plaintiff spoke with Alice Longmire to request sick leave between June 7, 2012 and June 13, 2012 in order to treat his carotid artery disease. (R. Doc. 38-2 at 63). Plaintiff informed Ms. Longmire that he would undergo surgery on June 7, 2012 to clear blocked arteries, but would be back to work by June 13, 2012, if not earlier. Ms. Longmire approved Plaintiff's leave request. (R. Doc. 38-2 at 63).

After undergoing surgery on June 7, 2012, Plaintiff called Ms. Longmire and informed her that his doctor had cleared him to return to work without restrictions. (R. Doc. 38-2 at 7). According to Plaintiff, Ms. Longmire said she would figure out Plaintiff's schedule and call him back with the information. (R. Doc. 38-2 at 7). After not receiving Ms. Longmire's call, Plaintiff went to Central Oil on June 15, 2012. (R. Doc. 38-2 at 7). At that time, Ms. Longmire informed Plaintiff that his direct supervisor, Brandt Daniels, had made the decision to terminate him. (R.

Doc. 38-2 at 7). Plaintiff was told that Central Oil was eliminating his position through a reduction in force caused by its declining used oil business. (R. Doc. 38-2 at 7).

Following his termination, Plaintiff filed his Complaint (R. Doc. 1) alleging Defendant violated the ADA by terminating him because of an actual disability or because Defendant regarded Plaintiff as disabled. (R. Doc. 1 at 6). Plaintiff also claims he was terminated because of his age, 67, in violation of the ADEA. Additionally, Plaintiff claims he was terminated because of his status as an older disabled worker. Defendant denies Plaintiff's allegations and suggests Plaintiff does not have a disability and was terminated for legitimate business reasons. After the parties conducted discovery, Defendant moved for summary judgment. (R. Doc. 32).

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A court must construe all facts and inferences in the light most favorable to the nonmovant and cannot weigh evidence or evaluate credibility. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

## III.   DISCUSSION

Plaintiff claims he was terminated because of his actual or perceived disability, and his age, in violation of the ADA and the ADEA. The ADA makes it unlawful for an employer to discriminate against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Likewise, the ADEA prohibits an employer from "discriminat[ing] against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). While the ADA and ADEA protect different traits, disparate treatment claims under either Act typically utilize the *McDonnell Douglas* burden-shifting proof structure established by the Supreme Court. *See McDonnell Douglas, Corp. v. Green*, 411 U.S. 792, 802-03 (1973).[2]

The *McDonnell Douglas* framework requires a plaintiff to first establish a prima facie case of discrimination. As clarified by the Supreme Court, this initial burden "is not onerous." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Once established, the burden shifts to the defendant to "produce admissible evidence that [its] decisions were based on legitimate, nondiscriminatory reasons." *Turner v. Kansas City. S. Ry. Co.*, 675 F.3d 887, 900 (5th Cir. 2012); *see also McDonnell Douglas*, 411 U.S. at 802-803. If the defendant carries its burden, the plaintiff must than prove by a "preponderance of the evidence that the legitimate reasons offered . . . were a pretext for discrimination." *Burdine*, 450 U.S. at 253.

Because the elements of Plaintiff's prima facie case under the ADA and ADEA are somewhat different, the Court will analyze the two separately. However, Defendant has offered the same legitimate nondiscriminatory reason for Plaintiff's termination to rebut both his ADA and ADEA claims. As such, Defendant's nondiscriminatory reason and Plaintiff's evidence of pretext will be considered without regard to the statute allegedly violated.

---

[2] Despite bringing his claims under the ADA and ADEA, the Court applies the burden-shifting framework established by the Supreme Court in *McDonnell Douglas, Corp. v. Green*, 411 U.S. 792, 802-03 (1973) — a disparate treatment claim brought under Title VII of the Civil Rights Act of 1964 (Tile VII), 42 U.S.C. § 2000e. Because the *McDonnell Douglas* framework is applicable to alleged violations of Title VII, the ADA, and the ADEA, the Court relies on relevant cases decided under all three statutes. *See, e.g., Turner v. Kan. City S. Ry.*, 675 F.3d 887, 891-92 (5th Cir. 2012) (applying *McDonnell Douglas* to Title VII); *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000) (applying *McDonnell Douglas* to an ADA claim); *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) ("While the Supreme Court has not definitively resolved whether it is, we are bound by our circuit precedent applying *McDonnell Douglas* to age discrimination cases.") (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 n.2 (2009) ("[T]he Court has not definitively decided whether the evidentiary framework of *McDonnell Douglas* utilized in Title VII cases is appropriate in the ADEA context.") (internal citations omitted)).

## A.      Plaintiff's Prima Facie Case of Disability Discrimination

To establish a prima facie violation of the ADA, a plaintiff must show that he or she was (1) disabled within the meaning of the ADA, (2) qualified for the position, and (3) subjected to an adverse employment action under circumstances giving rise to an inference of discrimination. *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998). Here, neither party disputes that Plaintiff was qualified for the job and that he was terminated. (R. Doc. 32-1 at 7). Therefore, the issue on summary judgment is whether Plaintiff is disabled within the meaning of the ADA.

In 2008, Congress amended the ADA to broaden the scope of disability in response to the Supreme Court's holdings in *Sutton v. United Airlines* and *Toyota Motor Mfg., Ky., Inc. v. Williams*. H.R. Rep. No. 110-730, pt. 1, at 1-2 (2008).[3] Cases like *Sutton* and *Toyota Motor* overly narrowed the intended scope of disability, too often eliminating coverage for those the ADA was meant to protect. H.R. Rep. No. 110-730, at 1-2. After the 2008 amendments determining disability should no longer "demand extensive analysis" — the "primary object of attention" should now be whether employers have "complied with their obligations and whether discrimination has occurred," as opposed to whether an individual is disabled. 29 C.F.R. § 1630.2(j)(1)(iii).

A plaintiff may be disabled under the ADA in one or more of three ways — having an actual disability, having a record of a disability or being regarded as disabled. 42 U.S.C. § 12102(1)(A)-(C). Here, Plaintiff is proceeding under the first (actual disability) and third (regarded as disabled) prongs.[4]

---

[3] *Sutton*, 527 U.S. 471, 486 (1999) ("those whose impairments are largely corrected by medication or other devices are not 'disabled'); *Toyota Motor*, 534 U.S. 184, 196 (2002) (ADA should be "interpreted strictly to create a demanding standard for qualifying as disabled").

[4] Defendant's Motion for Summary Judgment argues that Plaintiff cannot establish a record of a disability, in addition to the other two prongs. (R. Doc. 32-1 at 13-14). However, Plaintiff has never pleaded, or otherwise

### i.    Actual Disability

The ADA defines actual disability as a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12101(1)(a).  The Act provides a non-exhaustive list of major life activities which include "major bodily function[s]"— e.g., respiratory, circulatory, endocrine, and reproductive functions. 42 U.S.C. § 12102(2)(A)-(B). Whether a major life activity is "substantially limit[ed]" must be "construed broadly." 29 C.F.R. § 1630.2(j)(1)(i).  To be substantially limiting, an impairment does not have to "prevent, or significantly or severely restrict, the individual from performing a major life activity." 29 C.F.R. § 1630.2(j)(1)(ii).  Rather, an impairment is disabling if it substantially limits the individual's ability to perform major life activities as compared to most people in the general population. This comparison usually "will not require scientific, medical, or statistical analysis. 29 C.F.R. § 1630.2(J)(1)(v).  The overall inquiry *must* consider the impairment in its active state, without regard to the ameliorative effects of mitigating measures. 29 C.F.R. § 1630.2(j)(1)(vi).  Here, Defendant makes two arguments supporting its contention that Plaintiff is not actually disabled, neither of which accurately reflects the law or the evidence.

First, Defendant suggests Plaintiff's alleged impairment was not sufficiently permanent or long-term because it only prevented him from working during his brief recovery following surgery, after which he could return to work without restriction after only a few days of leave. (R. Doc. 32-1 at 12).  Defendant is incorrect, as a matter of law, that Plaintiff's impairment must be sufficiently "permanent or long-term" to be disabling.[5]  After the 2008 amendments, the

---

indicated an intention to pursue, a claim under the "record of" prong. (R. Doc. 1 at 6).  And so, the Court does not address Defendant's argument.

[5] This requirement was expressed by the Supreme Court in *Toyota Motor*, which has since been overruled. *See Toyota Motor*, 534 U.S. at 185 ("impairment's impact must also be permanent or long term"), *superseded by statute*, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008), *as recognized in Neely v. PSEG Texas,*

duration or permanence of an impairment is no longer taken into consideration. 29 C.F.R. § 1630.2(j)(1)(ix). Beyond that, Plaintiff's ability to return to work shortly after surgery does not establish that he no longer suffered from a disability. "The very existence of the ADA recognizes that a disability and gainful employment are not mutually exclusive." *Mercer v. Arbor E & T, LLC*, No. 11-3600, 2013 WL 164107, at *13 (S.D. Tex. Jan. 15, 2013).

Next, Defendant argues Plaintiff is not disabled because "there was no indication that his alleged disability restricted his job performance or ability to complete his job duties in such a manner as to bring to attention a 'disability.'" (R. Doc. 32-1 at 13). Moreover, Defendant points out that Plaintiff never "requested any type of special job duties or restrictions." (R. Doc. 32-1 at 13). Defendant misses the mark — its argument embodies the stereotypes the ADA was meant to break down by suggesting someone who is capable of working without restriction cannot also be disabled. A qualified individual with a disability is one who can perform the essential function of the job with or *without* a reasonable accommodation. *See* 42 U.S.C. § 12111(8) ("term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position."). The fact that Plaintiff could work without an accommodation or did not outwardly manifest any limitations is not inconsistent with the definition of disability. *See* 29 C.F.R. § 1630.2(j)(3)(iii) (in considering "actual disability . . . the focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve"). Defendant also fails to account for the ADA's requirement that Plaintiff's impairment be considered in its unmitigated state.[6]

---

*Ltd. Partnership*, 735 F.3d 242, 245 (5th Cir. 2013) ("ADAAA primarily focuses on broadening the definition of "disability" by singling out and superseding [*Sutton*] and [*Toyota Motor*].").

[6] Relying on 29 C.F.R. § 1630.2(j)(3)(1), Defendant also suggests Plaintiff is not disabled because he cannot show he is substantially limited in the major life activity of working — i.e., "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." (R. Doc. 32-1 at 11). However, Plaintiff has never alleged to be significantly limited in the major life activity of working, nor does he have to establish a

To defeat summary judgment, Plaintiff responds with scientific evidence, and his own testimony and affidavit, supporting his contention that his carotid artery disease is actually disabling in its unmitigated state. *See Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 595 (5th Cir. 1981) ("[F]acts asserted by the party opposing the motion, if supported by affidavits or other evidentiary material, are regarded as true."); *Molinav v. DSI Renal, Inc.*, 840 F. Supp. 2d 984, 994-95 (W.S. Tex. 2012) (plaintiff's deposition testimony regarding the unmitigated effects of her impairment was sufficient for a reasonable jury to conclude her impairment was substantially limiting, and to survive summary judgment). Plaintiff states that, in its unmitigated state, his carotid artery disease substantially limits his circulatory function by causing a build-up of plaque in the artery walls, leading to blood clots, which can prevent blood from flowing to his brain or cause a stroke. (Pl.'s Depo., R. Doc. 32-7 at 4); (R. Doc. 38-2 at 17). To mitigate his condition, Plaintiff takes prescription blood thinners and "cholesterol controlling drugs (Plavix, aspirin, and Lipitor)." (R. Doc. 38-2 at 17). Plaintiff also mitigates his disease through two stents permanently inserted into his arteries to increase blood flow. (R. Doc. 38-2 at 9). Drawing all reasonable inferences in Plaintiff's favor, a jury could reasonably conclude that he suffers from an actual disability within the meaning of the ADA, making summary judgment inappropriate. *See Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172-73 (7th Cir. 2013) (high blood pressure is a disorder of the circulatory system and therefore a disability even if plaintiff's medication prevented him from experiencing "episode[s] of elevated blood pressure and vision

---

substantial limitation in working simply because Defendant argues that he is not. Beyond that, the definition of the major life activity of "working," relied on by Defendant, was "removed from the text of the regulations" after the ADA Amendments Act of 2008. Regulations to Implement the Equal Employment Provisions of the ADAAA, 76 Fed. Reg. 16978-01, 17013 (March 25, 2011) (to be codified at 29 C.F.R. pt. 1630) (clarifying that in "most instances" a person will be able to show a "substantial limitation of a major life activity other than working" and that only in "rare cases" will a person need to show a substantial limitation in working); *see also Price v. Mount Sanai Hosp.*, 458 F. App'x 49, 51 (2d Cir. 2012) (§ 1630.2(j)(3)(i) has been superseded by § 1630.2(j) (2011), which eliminated the "class of jobs or broad range of jobs" language from the regulation).

loss" caused by his disorder); 29 C.F.R. pt. 1630, app. at § 1630.2(j)(1)(vi) ("[S]omeone who began taking medication for hypertension before experiencing substantial limitations related to the impairment would still be an individual with a disability if, without the medication, he or she would now be substantially limited in functions of the cardiovascular or circulatory system.").

### ii.    Regarded as Disabled

After the 2008 amendments, an individual is regarded as disabled if he or she was (1) "subjected to an action prohibited under" the ADA, (2) because of "an actual or perceived" impairment regardless of whether the impairment is, or is perceived to be, substantially limiting. 42 U.S.C. § 12102(3)(A).  Plaintiff clearly suffered an adverse employment action (termination) but Defendant claims there is no genuine issue of material fact concerning whether Plaintiff was terminated because of an "actual or perceived impairment." 42 U.S.C. § 12101(3)(A).  Defendant suggests it never had reason to believe Plaintiff was disabled because he "never indicated that he was disabled in any way . . . Even though he required surgery to correct the problem, he never indicated that he was or would be restricted by the surgery." (R. Doc. 32-1 at 14).

To begin, Defendant mistakes Plaintiff's surgery — a consequence of his impairment — as his actual impairment because it is the only obvious period during which Plaintiff outwardly manifested any restriction.  Beyond that, Defendant's subjective views regarding Plaintiff's lack of obvious restriction is unavailing.  The ADA no longer requires the employer to "perceive" the impairment as substantially limiting. *See* 29 C.F.R. § 1630.2(j)(1)(ix) ("Whether an individual's impairment 'substantially limits' a major life activity is not relevant to coverage under" the regarded as prong.); *Gaus v. Norfolk S. Ry. Co.*, No. 09-1698, 2011 WL 4527359, at *17 (W.D. Pa. Sept. 28, 2011) ("[Employer's] *subjective* views regarding the temporary nature of [employee's] impairment, however, are irrelevant.") (emphasis added).

The EEOC's regulations implementing the ADA Amendments Act of 2008 do, however, allow employers to defend against a claim of regarded as coverage by proving the perceived impairment actually is "both transitory and minor." 29 C.F.R. § 1630.15(f). Whether the perceived impairment is "transitory and minor is to be determined objectively." 29 C.F.R. § 1630.15(f). An employer may not defeat regarded as coverage "simply by demonstrating that it subjectively believed the impairment was transitory and minor." 29 C.F.R. § 1630.15(f). Thus, Defendant must show Plaintiff's carotid artery disease is *objectively* both transitory and minor.

Defendant has failed to point to any evidence or make any argument that would satisfy its burden of proving Plaintiff's impairment is both transitory and minor. As discussed above, Plaintiff has produced evidence that his carotid artery disease is substantially limiting and has been treated with prescription medication since Plaintiff was diagnosed in 2009 — well over 6 months. (R. Doc. 38-2 at 14-16). And so, Defendant is not entitled to summary judgment on this issue. *See Gaus*, 2011 WL 4527359, at *18-19 (defendant's argument that it did not perceive employee's impairment as permanent or substantially limiting was insufficient under ADAAA to warrant summary judgment); 29 C.F.R. § 1630.15(f) ("'[T]ransitory' is defined as lasting or expected to last six months or less.").

The record further indicates that, as early as October 14, 2011, Defendant knew that Plaintiff had suffered from carotid artery disease since 2009 and that he used prescription medication to treat his impairment. (R. Doc. 38-2 at 14-16). Plaintiff also testified that before he requested sick leave on May 22, 2012 to undergo surgery, he had already taken leave in early May of 2012 for a cardiologist appointment associated with his surgery. (R. Doc. 38-2 at 8). About a week before his scheduled leave, Plaintiff discussed his upcoming surgery to unclog his blocked arteries with his direct supervisor, Brandt Daniels. (R. Doc. 38-2 at 8). Plaintiff's

termination therefore occurred within two weeks of disclosing his surgery to Brandt Daniels and approximately one month after making two requests for leave associated with his carotid artery disease. Defendant suggests it could not have regarded Plaintiff as disabled where Plaintiff reported being "unsure if his supervisor was even aware of the surgery until he told him approximately a week before the surgery." (R. Doc. 32-1 at 14).

Contrary to Defendant's argument, this close temporal proximity is actually probative evidence raising an inference that Defendant regarded Plaintiff as disabled, and precludes summary judgment in Defendant's favor. That inference is even stronger given Defendant already knew Plaintiff suffered from carotid artery disease, used prescription medications, and had made two leave requests in a month-long period to treat his impairment. *See Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc*., 198 F.3d 68, 73 (2d Cir. 1999) (finding that employer with knowledge of plaintiff's cancer regarded him as disabled was "bolstered" by evidence that plaintiff had just requested "time off to be treated for lymphoma, and that shortly before he was fired [plaintiff] notified [employer] that he would miss his first morning of work" due to treatment); *McFadden v. Biomedical Systems Corp*., No. 13-4487, 2014 WL 80717, at *4 (E.D. Pa. Jan. 9, 2014) ("McFadden not only claims that BSC was aware of his impairment, he also alleges that he was fired within less than a week of his request for medical leave. His allegations of a close temporal proximity between his request for leave and his termination support an inference that BSC regarded him as disabled . . . ."); *Ward v. Sorrento Lactalis, Inc*., 392 F. Supp. 2d 1187, 1193 (D. Idaho 2005) ("circumstances surrounding Plaintiff's termination . . . raise a genuine issue of material fact regarding" whether plaintiff was regarded as disabled where "Defendant terminated Plaintiff on the day he returned from a leave of absence necessitated by a third back surgery"); *Kiniropoulos v. Northampton*

*County Child Welfare Service*, 917 F. Supp. 377, 386-87 (E.D. Pa. 2013) ("temporal proximity between Plaintiff's disclosure and his termination is sufficient to support an inference that Defendant regarded Plaintiff as disabled"); *Davis v. N.Y.C. Dep't of Educ.*, No. 10-3812, 2012 WL 139255, at *1-2, *5-6 (E.D.N.Y. Jan. 18, 2012) (employee stated a claim under ADAAA's "new, more lenient" standard for 'regarded as' coverage where employee suffered an adverse employment action shortly after taking leave to treat back and shoulder injury); *Price v. Dolphin Servs., Inc.*, No. 99-3888, 2000 WL 1789962, at *10 (E.D. La. Dec. 5, 2000) ("The proximity in time to plaintiff's Jan. 17, 1999 low blood sugar episode, particularly when considered along with Dolphin's response to the EEOC coordinator, is sufficient for a reasonable factfinder to conclude that plaintiff was terminated 'because of' his perceived disability.").

**B.      Plaintiff's Prima Facie Case of Age Discrimination**

Under the ADEA, a plaintiff has the burden of proving by a preponderance of the evidence, direct or circumstantial, that age was the "but-for" cause of the employer's adverse action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009).  To establish a prima facie case of age discrimination based on circumstantial evidence, a plaintiff must show he or she: (1) was at least 40 years old; (2) was qualified for the position; and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination. *See Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003).[7]

Defendant again does not dispute that Plaintiff was a member of the protected class, qualified, and subjected to an adverse employment action.  It does however claim that Plaintiff

---

[7] *See also Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1060 (5th Cir. 1998) ("he was otherwise [discriminated against] because of his age"); *Williams v. G.M. Corp.*, 656 F.2d 120, 127-28 (5th Cir. 1981) (In ADEA cases, this Circuit has "clearly acknowledged that '*McDonnell Douglas* (did) not establish an immutable definition of a prima facie case'" and "that the *McDonnell Douglas* Court itself had recognized the factual variety of discrimination cases and the corresponding need for a flexible view of a prima facie discrimination case."); *Achor v. Riverside Golf Club*, 117 F.3d 339, 343 (7th Cir. 1997) ("The statute's question is not the age of the replacement (or whether there was one) but whether the plaintiff would have kept his job had he been younger.").

cannot show that he was terminated "because of" his age. In support of his ADEA claim, Plaintiff offers evidence that he was the oldest employee, and the only one in his 60's, at the time of his termination (R. Doc. 38-2 at 19); his job was taken over by a younger employee (R. Doc. 38-2 at 19); and ageist comments, directed at him, were made by the company's owner and other employees.

Concerning the alleged comments, Plaintiff offers evidence that his former supervisor, Randy Jeansome, relayed to Plaintiff a conversation that took place between Mr. Jeansome and Mr. Jeansome's supervisor, Brandt Daniels, the day after Brandt Daniels interviewed Plaintiff. (R. Doc. 38-2 at 10). Mr. Daniels interviewed Plaintiff in July of 2011. According to Plaintiff's testimony and Mr. Jeansome's Affidavit: Mr. Daniels informed Mr. Jeansome that Mr. Daniels was worried about getting in trouble for hiring Plaintiff because the owner of Central Oil, Hardeman Cordell, did not want Mr. Daniels to "hire older people." (R. Doc. 38-2 at 10, 18). Defendant suggests Plaintiff cannot use the alleged comments to defeat summary judgment because they are inadmissible "stray remarks" and inadmissible hearsay.

This Circuit historically used a four-part test for stray remarks, first enunciated in *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996),[8] to determine whether comments constitute relevant evidence of discrimination. Statements that did not meet that test were rejected as mere "stray remarks." Defendant suggests that the comments offered by Plaintiff can only be considered if they meet this four-part test. (R. Doc. 32-1 at 8). However, following the Supreme Court's reversal in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 152 (2000), the Fifth Circuit "has distinguished between workplace comments presented as direct evidence of discrimination and those presented as additional (i.e., circumstantial) evidence in the course of a

---

[8] The *CSC Logic* test requires remarks to be: "1) age related; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *CSC Logic*, 82 F.3d at 655.

*McDonnell Douglas* analysis." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012). After *Reeves*, the Fifth Circuit continues to apply the *CSC Logic* test, but only "when a remark is presented as direct evidence of discrimination apart from the *McDonnell Douglas* framework." *Laxton v. Gap, Inc.*, 333 F.3d 572, 583 n.4 (5th Cir. 2003) (In a case of circumstantial evidence: "An oral statement exhibiting discriminatory animus may be used to demonstrate pretext or, as is the case here, it may be used as additional evidence of discrimination." *Id.* at 583.). Where remarks are offered as circumstantial evidence of pretext or affirmative evidence of discrimination under the *McDonnell Douglas* framework, "we apply a more flexible two-part test." *Reed*, 701 F.3d at 441. To pass muster as circumstantial evidence, statements must demonstrate discriminatory animus; and be made by a person who has leverage over the decision maker, or is otherwise in a position to influence, the challenged decision. *See Laxton*, 333 F.3d at 583; *Palasota v. Haggar Clothing*, 342 F.3d 569, 578 (5th Cir. 2003) (crediting comments from non-decisionmakers who were "in a position to influence the decision").

The statements at issue here satisfy the two-part test. First, they reflect a bias towards older workers in general and Plaintiff in particular, satisfying the first element. Second, the statements were made by Hardeman Cordell, to Brandt Daniels, the relevant decision maker, and later relayed to Randy Jeansome, by Mr. Daniels. Mr. Cordell is Brandt Daniels' immediate supervisor and the owner of Central Oil. Despite Defendant's claim that Mr. Cordell had nothing to do with the decision to terminate Plaintiff, Plaintiff has produced enough evidence to show that Mr. Cordell clearly qualifies as someone in a position to influence Plaintiff's direct supervisor, the ultimate decision maker. *See Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 333-34 (3d Cir. 1995) ("When a major company executive speaks, 'everybody listens' in the corporate hierarchy . . . and when the executive's comments prove to be disadvantageous to a

[company] . . . it cannot compartmentalize this executive as if he had nothing more to do with company policy than the janitor or watchman."); *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 285 (3d Cir. 2001) (summary judgment for employer reversed where record could support a jury finding that the ultimate decision-maker "did not make his decision in a vacuum").

In response to Randy Jeansome's affidavit corroborating Plaintiff's claim (R. Doc. 38-2 at 18), Defendant offers the affidavit of Mr. Cordell, who denies making the statements. (R. Doc. 39-2). Mr. Cordell's affidavit is insufficient to defeat summary judgment. Instead, it does little more than confirm the existence of a genuine issue of material fact. Which version of events is more credible is a question for the trier of fact — not this Court at the summary judgment stage. *Jones v. Robinson Property Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005) ("it is inappropriate to make credibility determinations or weigh the evidence on summary judgment").

Second, the discriminatory remarks cited by Plaintiff and contained in Randy Jeansome's affidavit are not inadmissible hearsay as Defendant suggests. Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(1)-(2). A statement is not hearsay if it "is offered against an opposing party" and "was made by the party's agent or employee on a matter within the scope of that relationship"; or if it is being offered for some other purpose besides its truth, such as knowledge or state of mind. Fed. R. Evid. 801(d)(2)(D).

The statements offered by Plaintiff are not hearsay because they constitute admissions of a party opponent. Both Mr. Cordell and Mr. Daniels hold management positions with Defendant and were involved in or seemingly influenced the decision to terminate Plaintiff. *Green v. Administrators of Tulane Educ. Fund*, 284 F.3d 642, 659-660 (5th Cir. 2002) (rejecting employer's argument that "district court improperly allowed [employee A] to testify about a

statement made [to employee A] by [employee B] that [employee C] gave [employee B] an ultimatum to 'get rid of [plaintiff]'") (*overruled on other grounds, Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 66 (2006)); *Stephens v. Erickson*, 569 F.3d 779, 793 (7th Cir. 2009) (to meet exception, agent "need not have been personally involved in that action, but her duties must encompass some responsibility related to the decisionmaking process affecting the employment action."); *Carter v. Univ. of Toledo*, 349 F.3d 269, 275-76 (6th Cir. 2003) (error to refuse to consider comments by vice provost responsible for complying with affirmative action requirements; hearsay exception reaches beyond "direct decision-makers").

In addition, even if the statements of Mr. Daniels remove any reference to his supervisor (Mr. Cordell), Mr. Daniels statement remains that "he might get in trouble for having okayed the hiring of someone as old as Suggs." (R. Doc. 38-2 at 18). This statement, made by the relevant decision maker, stands alone even if Mr. Cordell denies that this concern is well founded.

The record also indicates that Plaintiff's co-workers made comments that he was the oldest employee in the company and they could not "believe that [he] could do the work that [he] was doing." (R. Doc. 32-7 at 13). While this alone could not establish the ultimate question before the Court, it could be evidence of discrimination. That may depend on the context of these statements and the circumstances in which they were made. *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983) ("[T]he question facing triers of fact in discrimination cases is both sensitive and difficult. . . There will seldom be "eyewitness" testimony as to the employer's mental processes. But none of this means that . . . courts should treat discrimination differently from other ultimate questions of fact."); *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1214 (3d Cir. 1995) (discriminatory statements by non-decisionmakers properly used to build a circumstantial case of discrimination); *Josey v. John R. Hollingsworth*

*Corp.*, 996 F.2d 632, 641 (3d Cir. 1993) (court may consider as circumstantial evidence the atmosphere in which the company made its employment decisions). Finally, as discussed more fully below, *see infra* Part III.D, the evidence produced by Plaintiff establishes that he was the oldest employee of Central Oil, and the only one in his sixties, and that Plaintiff's job was taken over by a younger worker — Ivory Whitfield. (Def.'s Resp. to Interrog. No. 10, R. Doc. 38-2 at 19) (age of Plaintiff, Ivy Whitfield, and others employed by Central Oil in July of 2011 and April of 2012); (Def.'s Resp. to Interrog. No. 12, R. Doc. 38-2 at 81) (Ivory Whitfield took over used oil collection following Plaintiff's termination).[9]

### C.   Plaintiff's Intersectional Claim of Discrimination – Age and Disability

Plaintiff alternatively argues that he was terminated because of both his age and disability — i.e., his status as an older disabled worker. Because Plaintiff has provided sufficient evidence of both age and disability discrimination to survive summary judgment, his intersectional claim likewise survives Defendant's Motion for Summary Judgment. *See Jefferies v. Harris County Community Action Association*, 615 F.2d 1025, 1032 (5th Cir. 1980) (reasoning that if Congress passed legislation to protect both sex and race, it would be illogical to "condone a result which leaves black women without a viable Title VII remedy"); *EEOC v. DynMcDermott Petroleum Operations Co.*, 537 F. App'x 437, 448 (5th Cir. 2013) (reversing summary judgment for employer where a "reasonable jury could return a verdict for the EEOC, finding that but for [charging party's] age and disabled wife, [employer] would have hired him"); *Leal v. McHugh*, 731 F.3d 405, 414-15 (5th Cir. 2013) (*Gross v. FBL Financial Servs.*'s requirement that ADEA plaintiff prove age was but-for cause of adverse employment action does not preclude plaintiff from establishing a discrimination claim based on age, plus some other trait, like disability);

---

[9] The Court acknowledges that Defendant disputes that Plaintiff's job was taken over by anyone and contends that the job was eliminated. Both sides point to different evidence supporting their individual position.

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) ("District Court correctly "lumped together" Plaintiff's Title VII, ADEA, Section 1981 and Ohio state law theories of discrimination and applied the McDonnell Douglas/Burdine evidentiary framework . . . .").

>    D.    **Defendant's Legitimate Nondiscriminatory Reason and**
>          **Plaintiff's Evidence of Pretext**

Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant to "rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. . . . To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence," the reasons for the adverse employment action. *Tx. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). A defendant's intermediate burden of establishing a legitimate nondiscriminatory reason serves "to frame the ultimate factual issue of discrimination . . . with sufficient clarity." *Burdine*, 450 U.S. at 255. If the defendant carries its burden of production, the plaintiff must then "have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision." *Id.* at 256. Offering proof that the defendant's "explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000); *see also Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978) ("when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer . . . based his decision on an impermissible consideration").

Here, Defendant claims that Plaintiff's position was eliminated a "due to a reduction in force." (R. Doc. 38-2 at 98). Central Oil had been experiencing a steady "downturn in its used oil business" (R. Doc. 32-1 at 17), in the "months leading up to Plaintiff's termination . . . and

the administration had discussed possibly letting employees go." (R. Doc. 39 at 7). According to

Defendant, before Plaintiff was hired "Central Oil had never had a driver designated only for

used oil collection"; the "used oil collection had [previously] been handled by Ivory Whitfield,

who performed other job duties in addition to the used oil collection." (R. Doc. 32-1 at 16).

While Plaintiff was on sick leave, Ivy Whitfield performed Plaintiff's duties. "It was at that

time," Defendant claims, that it "decided that the full time used oil driver position would be

eliminated, and the used oil driver duties would again be assumed by Mr. Whitfield" who "still

maintains the used oil collection duties." (R. Doc. 32-1 at 17). Defendant insists that it "does

not, nor has it had, a full time used oil driver since Plaintiff's termination." (R. Doc. 39 at 1).

      While Central Oil has stated a legitimate non-discriminatory reason for Plaintiff's

termination, Plaintiff has produced sufficient evidence to establish a genuine issue of material

fact concerning the veracity of Defendant's legitimate non-discriminatory reason. *See Nichols v.*

*Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) ("If Nichols can raise a genuine issue of

material fact as to whether he has established pretext, that will suffice to avoid summary

judgment. No additional evidence of discrimination is needed to defeat the summary judgment

motion."); *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir. 1994) (While

plaintiff bears the ultimate burden at trial, "for summary judgment purposes, [as] the non-moving

party," plaintiff "has a lesser burden. He must only produce evidence from which a rational

factfinder could infer that the company lied about its proffered reasons for his dismissal.").

Taken as a whole, the record before the Court contains genuine issues of material fact regarding

whether Defendant terminated Plaintiff because of his age and disability.

      Defendant stated that the administration had discussed laying off "*employees*" because of

a downturn. (R. Doc. 39 at 7) (emphasis added). However, the record reflects that Plaintiff was

the only employee terminated at the time.  In addition, a new employee, Raymond Mills, was hired through a staffing agency the same day of Plaintiff's termination, and frequently worked overtime in the upcoming months. (R. Doc. 38-2 at 85, 87-89, 90-91, 93-96).  Two additional employees also performed work for Central Oil through a staffing agency in June of 2012. (R. Doc. 32-5 at 1, 37).  Central Oil hired two permanent employees (R. Doc. 38-2 at 64, 82, 83) and an additional temporary employee through a staffing agency in the following month of July (R. Doc. 32-5 at 75-80).

Referring to its decision to initially hire Plaintiff, Defendant's Rule 30(b)(6) deponent testified: "We thought that we were going to see an increase in [used oil] sales, so we hired a dedicated driver to do it. But we didn't, so we went back to the old way of doing it"—i.e., having Ivy Whitfield handle the used oil duties in addition to his other responsibilities. (R. Doc. 38-2 at 80).  Defendant's claim that it failed to see an increase in used oil is contradicted by the record. According to Defendant's used oil logs, in the months preceding Plaintiff's hiring it collected the following amounts of used oil:

| | | | |
|---|---|---|---|
| Jan. 2011 | 7,276 | April 2011 | 8,500 |
| Feb. 2011 | 8,870 | May 2011 | 7,055 |
| March 2011 | 6,380 | June 2011 | 5,930 |

(R. Doc. 32-11 at 1-6).  These amounts are among the lowest over the two years of data provided by Defendant.  In July of 2011, the month that Plaintiff was hired, used oil collection reached 11,820 gallons — higher than any month between January and June of 2011.  While Plaintiff was employed as the used oil driver, Central Oil collected the following amounts of used oil per month:

| | | | |
|---|---|---|---|
| August 2011 | 6,362 | Jan. 2012 | 13,470 |
| Sept. 2011 | 6,060 | Feb. 2012 | 14,106 |
| Oct. 2011 | 9,822 | March 2012 | 10,059 |
| Nov. 2011 | 16,585 | April 2012 | 9,616 |

|           |       |            |        |
|-----------|-------|------------|--------|
| Dec. 2011 | 9,570 | May 2012   | 7,523  |
|           |       | June 2012  | 10,128 |

(R. Doc. 32-11 at 7-18). Contrary to Defendant's Rule 30(b)(6) deponent, used oil collection did increase and consistently remained at a higher level than it was before Plaintiff was hired in July of 2011. In fact, the three highest month of used oil collection occurred during Plaintiff's employment – in November of 2011, and January and February of 2012. (R. Doc. 32-11).

Moreover, Defendant suggests that used oil had been declining for months before Plaintiff's termination and the administration no longer felt it was profitable to employ a full-time used oil driver. There is no indication of which administrative employee(s) were involved in making this decision, or evidence analyzing the profitability of used oil compared with the company's other oil industries. And the only indication of the "downturn" months Defendant is referring to is in Alice Longmire's testimony that used oil had been slow for two months (April and May) before Plaintiff's termination. (Longmire Depo., R. Doc. 38-2 at 13) ("Probably two months"); (Longmire Depo., R. Doc. 32-9 at 5) ("We were not picking up any used oil and we had lost a lot of used oil."). Defendant additionally points out in its Reply that used oil sales declined from 14,106 in February of 2012 to 7,523 in May of 2012. (R. Doc. 39 at 8 n.1). While this is correct, it is a somewhat misleading characterization of the record.

February 2012's collection of 14,106 gallons was the second highest amount of used oil collected for the two years of data in the record. (R. Doc. 32-11). And collections in March and April — 10,059 and 9,616 — were both higher than the collections occurring in the months leading up to, and following, Plaintiff's initial start date. Plaintiff also points to record evidence establishing that the used oil truck was broken and out of service from May 14, 2012 through May 30, 2012, accounting for May's sharp decline in used oil collection. (R. Doc. 38-2 at 6, 37,

73); (R. Doc. 32-11 at 17). Plaintiff additionally notes that before the used oil truck broke down, he collected 6,998 gallons of used oil during the first half of May of 2012. (R. Doc. 38-2 at 37).

Defendant also contends that it "does not, nor has it had, a full time used oil driver since Plaintiff's termination" and that Plaintiff's "duties were simply absorbed by other employees of Central Oil," in particular, Ivy Whitfield, who "resumed picking up used oil and continues to collect used oil." (R. Doc. 39 at 1-2); *see also* (30(b)(6) depo., R. Doc. 38-2 at 80) ("[Mr. Whitfield] splits his time" between his job duties and Plaintiff's old job duties. "That's why we don't need a full-time person because there's not enough to pick up."). This contention, however, is also not as straightforward as it appears when considering the evidence submitted to the Court.

To begin, Ivy Whitfield testified that Alice Longmire assured him he was only being "temporarily" assigned to used oil collection following Plaintiff's termination. (R. Doc. 38-2 at 75). Mr. Whitfield also acknowledged that he was not able to collect the amount of used oil, or spend as much time collecting used oil, as Plaintiff because, unlike Plaintiff, Mr. Whitfield did not solicit used oil customers. (Whitfield Depo., R. Doc. 38-2 at 73); (Pl. depo., R. Doc. 38-2 at 6). Moreover, another employee, Raymond Mills, was immediately brought on through a hiring agency to assist Ivy Whitfield now that part of his time was devoted to used-oil. (R. Doc. 39 at 2). Two other employees were also brought on through a staffing agency in June of 2012. (R. Doc. 32-5 at 1, 37); (R. Doc. 38-2 at 64, 82) (Defendant's hiring records do not reflect Mr. Mills' hiring given Mr. Mills technically remained an employee of the staffing agency he was hired through). After Raymond Mills quit in November, both Ivy Whitfield and Alice Longmire testified that a full-time used oil driver was hired around November or December of 2012. (Longmire, depo., R. Doc. 32-9 at 5) ("I do know that [he] was hired just as a used oil driver . . .

."); (Whitfield, depo., R. Doc. 38-2 at 74) ("They hired him as a used oil driver. . . . [T]hat's what they told me they were going to hire him as and I had to train him.").  Whitfield further indicated that the new used oil driver essentially performed the same job as Plaintiff did at Central Oil, but that he was only employed for a few months because "[the new used oil driver] had to have an operation and that's why he had to leave too." (R. Doc. 38-2 at 75-76).

The record contains genuine issues of material fact regarding Defendant's proffered legitimate non-discriminatory reason. *See Artis v. Hitachi Zosen Clearing, Inc.*, 967 F.2d 1132, 1140 (7th Cir. 1992) ("the less sensible an employer's decision appears to be, the more likely it is that the jury will not credit it.").  And so, Plaintiff has pointed to enough evidence that might allow a reasonable jury to find pretext, precluding summary judgment.

## E.      Plaintiff's Reasonable Accommodation Claim

In addition to his termination claim, Plaintiff alleges Defendant violated the ADA by failing to provide him with a reasonable accommodation. (R. Doc. 1 at 8-7).  The ADA obligates an employer to reasonably accommodate the known physical or mental impairments of a qualified individual with a disability.  42 U.S.C. §§ 12112(b)(5)(A)-(B) (employer violates ADA by "not making reasonable accommodations"), 12111(9)(A)-(B) (examples of reasonable accommodations).  This obligation arises once an employer is put on notice of an employee's need to be reasonably accommodated — which usually, but not always, occurs after the employee requests an accommodation. *Loulseged v. Azko Nobel Inc.*, 178F.3d 731, 736 n.5 (5th Cir. 1999).  Once the employer is put on notice, the ADA requires both parties to engage in a good faith interactive process to develop a reasonable accommodation.

The precise "contours of the interactive process must be determined on a case-by-case basis." *Picard v. St. Tammany Parish Hosp.*, 611 F. Supp. 2d 608, 621 (E.D. La. 2009) (Vance,

J.) ("For example, when it is obvious what accommodation is necessary, the accommodation can be provided without the need for further consultation between the parties.").  An employer that demonstrates a good faith effort to engage in the interactive process and to make a reasonable accommodation is shielded from liability for compensatory and punitive damages.  On the other hand, "[w]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 316 (5th Cir. 2007). But if the breakdown of the interactive process is traceable to the employee rather than the employer, there is no violation of the ADA. *Loulseged v. Azko Nobel Inc.*, 178F.3d 731, 736 (5th Cir. 1999).

Defendant argues there is no genuine issue of material fact concerning its accommodation of Plaintiff's alleged impairment.  The Court agrees.  While Plaintiff's complaint appears to allege a failure to accommodate claim, Plaintiff seems to abandon, or at least fails to present argument on, this cause of action in his Opposition to Defendant's Motion for Summary Judgment.  Defendant has likewise produced sufficient evidence that it provided Plaintiff's requested accommodation for leave to undergo surgery. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir. 2004) ("[T]he federal courts that have permitted a leave of absence as a reasonable accommodation under the ADA have reasoned . . . that applying such a reasonable accommodation at the present time would enable the employee to perform his essential job functions in the near future.").  Aside from surgical leave, the record does not indicate a request for any other accommodation.  Plaintiff was given the leave he requested and was ready and willing to return to work at the conclusion of that leave. The termination of Plaintiff's employment occurred after that period.

To the extent Plaintiff alleges a failure to accommodate claim under the ADA, the Court finds that Plaintiff has not pointed to any record evidence that might defeat summary judgment on this issue. As such, Defendant's Motion for Summary Judgment is granted as to Plaintiff's failure to accommodate claim under the ADA.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's failure to accommodate claim, only. Defendant's Motion for Summary Judgment is otherwise **DENIED**.

Signed in Baton Rouge, Louisiana, on July 3, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**